UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,         CASE NO. 17-20738
                                    HON. DENISE PAGE HOOD

v.

MOHAMED ABDI,

       Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS [# 35]

**I.    BACKGROUND**

On October 19, 2017, a Criminal Complaint was filed against Defendant Mohamed M. Abdi ("Abdi"). (Doc # 1) On February 14, 2018, Abdi was charged by Superseding Indictment with nine counts of Interference with Commerce by Robbery (18 U.S.C. § 1951(a)) (Counts I, III, V, VII, IX, XI,XIII, XV, XVII), and nine counts of Use of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)) (Counts II, IV, VI, VIII, X, XII, XIV, XVI, XVIII). (Doc # 21) A trial is scheduled to begin on November 7, 2018. (Doc # 40) On June 12, 2018, Abdi filed a Motion to Suppress. (Doc # 35) The Government filed a Response on July 3, 2018. (Doc # 37) An evidentiary hearing was held.

1

Abdi seeks to suppress all statements Abdi that he made to law enforcement officers on October 18, 2017, arguing that he was either not read his *Miranda* rights while subject to custodial interrogation, or did not voluntarily, knowingly, and intelligently waive his rights under the Fifth and Sixth Amendments. Abdi made inculpatory statements to police officers during questioning on three separate occasions on October 18, 2017.

## II. FINDINGS OF FACT

Abdi is alleged to have committed a series of robberies between June 26, 2017 and October 18, 2017. The robberies occurred in several Michigan cities, including Eastpointe, Warren, Allen Park, St. Clair Shores and Lincoln Park. The police reports for each robbery described a man entering each store wearing a hat and sunglasses, displaying a handgun, and asking the cashier to give the robber money from the cash register. The robber left the scene of each robbery in a white vehicle. On October 18, 2017, an all-points bulletin was issued indicating that a CVS in St. Clair Shores had been robbed.

On October 18, 2017, Grosse Pointe Woods Police stopped Abdi because he and his vehicle, a white Buick Rendezvous, matched the description of the suspect who committed the robbery at the CVS in St. Clair Shores, Michigan. The arresting officer, Sergeant Gardzella ("Sergeant Gardzella") observed Abdi's vehicle pull into a parking lot and saw Abdi exit the vehicle. Sergeant Gardzella approached Abdi

and ordered him to stop and place his hands on his head. Sergeant Gardzella engaged in a *Terry* stop and pat-down search of Abdi. The search was recorded on the dashcam video of Sergeant Gardzella's car. The video shows Sergeant Gardzella asking Abdi his name and where Abdi was coming from. Abdi told Sergeant Gardzella his name, "ABDI," and that he was coming from Roseville. Next, Sergeant Gardzella asked Abdi where Abdi was going, and Abdi told Sergeant Gardzella he was headed to the hospital.

Then the nature of the questioning changed. At the fifty-eighth second in the video, Sergeant Gardzella asked Abdi, "Do you have a weapon in that car?" To which Abdi replied, "Yes." One minute into the video, Sergeant Gardzella told Abdi, "Turn around," and, "Drop your keys." Five seconds later, Abdi told Sergeant Gardzella, "I did something stupid." Ten seconds later, Sergeant Gardzella asked Abdi, "Did you rob that store?" Abdi responded, "Yes." Next, Sergeant Gardzella radioed to this colleagues stating, "I got the suspect in custody."

Sergeant Gardzella asked Abdi where "the gun" was located. Abdi told the Sergeant Gardzella that the gun was in the center console of his car. Shortly thereafter, Sergeant Gardzella and another Grosse Point police officer checked Abdi's vehicle. The officers found a green Michigan State University baseball cap, the butt end of a stainless steel hand gun, and a translucent bag with an unknown amount of U.S. currency. Abdi was never read his *Miranda* rights. Abdi was taken

3

into custody by Officer Stindt of the St. Clair Shores Police Department (SCSPD) and transported to the police station for processing and booking.

Once processed and booked, the Defendant was interviewed by two officers, Sergeant Brueckman and Detective Dlugokenski. The interview was recorded. One of the officers read Abdi his *Miranda* rights starting at thirty-two seconds into the recording. At one minute and three seconds into the recording, one of the officers asked Abdi if he understood his rights as the officer read them, to which Abdi replied, "Yes, I do." Next, an officer asked, "Having these rights in mind do you wish to talk to us now?" Abdi replied, "I . . . us. . . Is there a lawyer around now by chance or no?" One of the officers answered, "We don't have one here, no." Abdi added, "Okay so, if I was to request one, how long would it take him to get here?" An officer replied, "You would have to get your own." Abdi asked, "I would have to get my own? If I can't afford one?" An officer responded, "Then at court they would appoint one to you, the court would appoint one to you after your arraignment." Abdi asked, "And when would that happen?" An officer replied, "Not sure yet."

Then, after an eight second pause in the recording, one of the officers told Abdi, "We have to read you your rights . . . and we have to let you know your rights." Abdi replied, "I know my rights." Later, at the one minute and fifty seconds into the recording, Abdi stated, "I have twins at home. Ford is not paying the bills, and I did

4

something stupid." At two minutes and five seconds into the video, one of the officers asked Abdi if he wanted to continue with the interview, or if he wanted to wait. Abdi replied, "I guess I can talk." Abdi added that he would not answer every question, just questions about certain things. One of the officers replied, "We can't make you . . . that's up to you." After that exchange, the officers engage in their interrogation of Abdi, and he makes several inculpatory statements to the officers.

Later that day, Federal Bureau of Investigation ("FBI") Special Agents Moser and Herrera questioned Abdi about the CVS robbery in St. Clair Shores and the other robberies. Special Agents Moser and Herrera fully advised Abdi on his *Miranda* rights, and Abdi admitted to committing all of the robberies in question.

## III. ANALYSIS

Abdi argues that all the statements he gave during the three October 18, 2017 interviews should be suppressed. Abdi argues that the inculpatory statements he made after he told Sergeant Gardzella he had a gun in his car should be suppressed because he was never read his *Miranda* rights while being subject to custodial interrogation. (Doc # 35, Pg. ID 102) Abdi argues that the inculpatory statements he made during the interview with Sergeant Brueckman and Detective Dlugokenski must be suppressed because the officers intentionally misled him about his rights before the interrogation and Abdi did not knowingly, voluntarily, and intelligently waive his right against self-incrimination or his right to counsel. (*Id.* at 105) Abdi

5

argues that his statements made to the FBI agents must be suppressed as a violation of Abdi's constitutional rights because they are the fruit of a poisonous tree. (*Id.* at 102) Abdi also contends that the evidence obtained from the warrantless search of his vehicle should be suppressed, and that the evidence in the vehicle is the fruit of a poisonous tree. (*Id.* at 100)

The Government responds that the Motion should be denied because: (1) Abdi's statements to Sergeant Gardzella and the Grosse Pointe Woods police fall within the public safety exception to *Miranda*; (2) Abdi knowingly, voluntarily, and intelligently waived his *Miranda* rights during the interview with Sergeant Brueckman and Detective Dlugokenski; (3) and Abdi did not unambiguously invoke his right to counsel. (Doc # 37, pp. 7, 12, 15) The Government adds that the warrantless search of Abdi's vehicle was permissible under the automobile exception, the inventory exception, and the inevitable discovery doctrine. (*Id.* at 10)

### *1. Statements Made After Abdi Provided the Location of His Gun*

Abdi contends that the statements he made after he informed Sergeant Gardzella that he had a gun in his car should be suppressed because he was subject to custodial interrogation without being read his *Miranda* rights. The Government concedes that Abdi was never read his *Miranda* rights. The Government argues that the public safety exception to *Miranda* applies in this case. The Court finds Abdi's argument meritorious. It is clear that Abdi was interrogated by Sergeant Gardzella,

6

as he specifically asked Abdi questions that would link him to the CVS robbery after identifying Abdi and his vehicle as matching the suspect who committed the robbery. *See Rhode Island v. Innis*, 446 U.S. 291 (1980) (holding that courts must consider whether a law enforcement official should have known that her conduct was "reasonably likely to elicit an incriminating response" to determine whether an interrogation occurred). The Court must determine whether Abdi was in custody for *Miranda* purposes.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established procedural safeguards that mandate that law enforcement officials inform a person of their *Miranda* rights before subjecting them to "custodial interrogation." *See id.* at 444–45. "[O]nly where there has been such a restriction on a person's freedom as to render him 'in custody'" does the *Miranda* requirement apply. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

"In determining whether a person is 'in custody' for purposes of *Miranda*, courts look to 'the objective circumstances of the interrogation' . . . to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action[.]" *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017) (quoting *United States v. Panak*, 552 F.3d 462, 465 (6th

Cir. 2009)). A court must make the determination viewing the totality of circumstances, guided by four non-exhaustive factors: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *Luck*, 852 F.3d at 621 (citing *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)).

Abdi was stopped and frisked in a parking lot by Sergeant Gardzella. After frisking Abdi, Sergeant Gardzella engaged in two minutes of questioning to determine whether Abdi was the suspect who robbed the CVS. After Abdi stated that he had a gun in his car, Sergeant Gardzella demanded that Abdi turn around to be handcuffed and drop his car keys. Less than thirty seconds later, Sergeant Gardzella radioed other officers to tell them that he had the suspect in custody. Sergeant Gardzella never told Abdi that he did not have to answer any questions. Based on the facts, Abdi was in police custody after Sergeant Gardzella told Abdi to turn around and drop his keys. The Government does not dispute that Abdi was in police custody at that time.

The Government argues, however, that Sergeant Gardzella was not required to inform Abdi of his rights during the interrogation because the questioning falls within the public safety exception to *Miranda*. Abdi argues that he was detained, handcuffed, and not free to leave, which required Sergeant Gardzella to read Abdi

8

his rights before continuing with his interrogation. Abdi adds that once he stated that he did "something stupid," Sergeant Gardzella was certainly required to read him his rights in accordance with *Miranda*.

When law enforcement officers ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect," officers are not required to inform the suspect of the warnings provided by *Miranda*. *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). The application of the public safety exception is based on the "objective facts" and takes into account factors such as (1) "the known history and characteristics of the suspect," (2) the "known facts and circumstances of the alleged" criminal acts, and (3) "that facts and circumstances confronted by the officer when he undertakes the arrest." *Id.* at 428. An officer must have reason to believe "(1) that the [suspect] might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it" for the public safety exception to apply. *Id.*

The public safety exception only applies in circumstances when both conditions are met based on the facts and no other facts "rebuts the inference that the officer reasonably could have perceived a threat to public safety." *Id.* The Sixth Circuit has held that "the reasonableness of an officer's perception of danger will always depend on the type of weapon in question." *United States v. Hodge*, 714

9

F.3d 380, 386 (6th Cir. 2013). When presented with "a case involving a *gun*, the police must be aware of a third party who can access the gun and harm others" for the public safety exception to apply. *Id.* (emphasis in original). A gun alone does not create a reasonable threat of danger. *Id.*

In the present case, Sergeant Gardzella confronted and detained a suspect that had allegedly committed armed robbery shortly before their encounter. Sergeant Gardzella knew that the suspect had also allegedly committed eight other robberies with a gun. In addition, Abdi told Sergeant Gardzella that his gun was in his car. Those unambiguous facts demonstrate that Sergeant Gardzella had reason to believe that Abdi had recently possessed a gun.

The facts are devoid of any evidence that Sergeant Gardzella had reason to believe that someone other than the police might gain access to Abdi's gun. The police report did not indicate that Abdi had an accomplice, and neither did the previous robbery reports. Further, the video of the parking lot shows that there was not anyone else walking near Abdi's car when Sergeant Gardzella was interrogating him. Although the public safety exception permits questions asked to a suspect in handcuffs, the fact Abdi stated that his gun was in the car demonstrates that the questions asked after Sergeant Gardzella told Abdi to drop his keys were attempts to obtain "testimonial evidence" and not to "secure [the officers] own safety or the safety of the public." *United States v. Williams*, 272 F. App'x 473, 477–78 (6th Cir.

2008); *see also United States v. Brathwaite,* 458 F.3d 376, 382 n. 8 (5th Cir. 2006) (finding public safety exception inapplicable where the defendants were handcuffed outside of their house and police officers asked whether any guns were "*in the house*"). Since there is no evidence that any of the Grosse Pointe Woods police officers were aware of someone else who might access Abdi's gun and harm someone, the public safety exception does not apply to this case.

Abdi should have been read his rights in accordance with *Miranda* after Sergeant Gardzella told Abdi to turn around and drop his keys, and certainly after Abdi stated that he did "something stupid." After those comments, Abdi was subject to custodial interrogation. Abdi's statement to Sergeant Gardzella at the parking lot are suppressed, as the public safety exception does not apply.[1]

### *2. Statements Made During the Interview with Sergeant Brueckman and Detective Dlugokenski*

Abdi contends that Sergeant Brueckman and Detective Dlugokenski misled him about his rights before they interrogated him at the station. Abdi claims he did not knowingly, voluntarily, and intelligently waive his right against self-incrimination or his right to counsel before that interrogation. The Government

---

[1] Abdi mentions that since the statements he made to Sergeant Gardzella should be suppressed, all of his subsequent statements made at the police station should similarly be suppressed because they are fruit of the poisonous tree. (Doc # 35, Pg. ID 102) However, Abdi does not develop this argument nor cite any authority that supports his position on this matter.

11

argues that Abdi did knowingly, voluntarily and intelligently waive his *Miranda* rights based on the facts.

Even if law enforcement officers inform a suspect of his *Miranda* rights, the suspect's subsequent statements may be suppressed if the suspect did not waive his rights "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. Courts must explore "two distinct dimensions" for the inquiry. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* For a court to conclude that a suspect's *Miranda* rights have been waived, the totality of the circumstances must indicate both a "(1) [non-coercive] choice and (2) the requisite level of comprehension." *Id.* Courts examine the facts surrounding the case, including the experience and conduct of the suspect. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009). A suspect need not have known and understood "every possible consequence of a waiver of the Fifth Amendment privilege," but must have known "that he could choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.*

Abdi does the not argue that the *Miranda* warnings that were given to him were defective. Abdi argues that Sergeant Brueckman and Detective Dlugokenski deceived him about the nature of his right to have counsel present while being interrogated. Based on the recording of the interrogation, it is clear that Adbi was made fully aware of his rights under *Miranda*. Specifically, one of the officers informed Abdi of his right to have a lawyer present during questioning and his right to have a lawyer appointed to represent him prior to questioning. The officer then asked Abdi whether he understood his rights as the officer read them to him. Abdi replied, "Yes, I do."

Subsequently, Abdi began to express some confusion. When one of the officers asked Abdi if he would like to begin the interrogation, Abdi asked if there was a lawyer around that he could speak with. After one of the officers told Abdi that there was not a lawyer at the precinct, Abdi asked how long it would take if he requested a lawyer. One of the officers told him he would have to get his own lawyer if he wanted one. After Abdi asked what would happen if he could not afford a lawyer, one of the officers told Abdi that a court would appoint him a lawyer after his arraignment. Then one of the officers told Abdi he was not sure when his arraignment would take place. After a long pause, one of the officers told Abdi that the officers had to read him his rights. Abdi responded, "I know my rights." After that remark, one of the officers responded, "Well you've never been in trouble. . . .

13

That's why it's a bit surprising." Abdi later indicated that he would answer some of the officers' questions, but not all of them.

Although it is clear that Abdi voluntarily provided statements to Sergeant Brueckman and Detective Dlugokenski during the interview, the facts indicate that Abdi did not know and fully understand that he could have had a court-appointed lawyer assigned to him prior to and during his questioning. Abdi asked several questions regarding his right to have counsel present during questioning. Abdi also made equivocal statements suggesting he wanted to exercise his right to have a lawyer present while being questioned. One of the officers attempted to clarify Abdi's understanding of his right to have a court-appointed attorney to represent him by stating that one would be assigned to Abdi at his arraignment. While this was true, the officer did not clarify that the court-appointed counsel that would be assigned to Abdi at his arraignment could also be present during Abdi's interrogation.

In *California v. Prystock*, 453 U.S. 355 (1981), the Supreme Court held that "reference to appointed counsel [that] was linked to a future point in time after police interrogation, []did not fully advise the suspect of his right to appointed counsel before such interrogation." In *Prystock*, the Supreme Court ruled against the respondent alleging the *Miranda* violation because "nothing in the warnings given []suggested any limitation on the right to the presence of appointed counsel different

14

from the clearly conveyed rights to a lawyer in general, including the right" to have a lawyer before a suspect is questioned by law enforcement. *Id.* at 361. In the present case, although the clarification was deficient because the officer never stated that Abdi could have a lawyer present before his interrogation, the initial warnings provided by the officers were sufficient for *Miranda* purposes. Abdi indicated that he was aware of his rights twice before the interrogation started.

In addition, Abdi never invoked his right to have an attorney present unambiguously. *See Davis v. United States*, 512 U.S. 452, 459 (1994) ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."). Similarly, Abdi never invoked his right to remain silent. *United States v. Calvetti*, 836 F.3d 654, 661 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 1597 (2017). Abdi's rights under *Miranda* were not violated during the interview with Sergeant Brueckman and Detective Dlugokenski.

### *3. Statements Made to the FBI Agents*

Abdi also argues that the inculpatory statements he made to FBI agents should be suppressed because they are the fruit of a poisonous tree. The Court disagrees. Abdi concedes that all the inculpatory statements that he made to the FBI agents were made after the agents fully advised Abdi of his rights under *Miranda*, and that

he waived his rights. The statements Abdi provided to the FBI agents were not the product of a *Miranda* violation.

### 4. Warrantless Search of Abdi's Car

Abdi also argues that the evidence obtained from the warrantless search of his car should be suppressed because the evidence is the fruit of a poisonous tree. *See generally Wong Sun v. United States*, 371 U.S. 471 (1963). First, even though the officers violated Abdi's *Miranda* rights before searching the vehicle, the appropriate remedy for a *Miranda* violation is the exclusion of the statements provided without being read his *Miranda* rights, not the exclusion of physical evidence. *See United States v. Patane*, 542 U.S. 630, 643 (2004) ("Our decision not to apply *Wong Sun* to mere failures to give *Miranda* warnings was sound . . . and we decline to apply *Wong Sun* to such failures now."). Second, the warrantless search of Abdi's car was permissible under either the automobile exception or the inventory exception to the warrant requirement. *United States v. Lumpkin*, 159 F.3d 983, 986–87 (6th Cir. 1998). Abdi's car fit the description of the robber's vehicle in the police report for the CVS robbery and Abdi told Sergeant Gardzella that the gun was inside the car. In addition, the police officers would have searched Abdi's car after seizing it for a search. The warrantless search of Abdi's car was not in violation of the Fourth Amendment.

### A. Exclusionary Rule

### 1. *Fourth Amendment*

The judicially-created exclusionary rule is designed to safeguard Fourth Amendment rights through its deterrent effect. *Herring v. United States*, 555 U.S. 135, 139-40. In deciding whether to apply the rule, courts weigh the benefits and costs of deterrence. *Id.* at 141. The benefit of some incremental deterrence must be weighed against the possibility of letting a guilty and possibly dangerous defendant go free. *Id.* A court should consider the flagrancy of the police misconduct, and evidence should be excluded only if the officer may properly be charged with knowledge that the search was unconstitutional. *Id.* at 143. The pertinent analysis of deterrence and culpability is objective, and the question is whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances. *Id.* at 145.

Abdi has not shown a Fourth Amendment violation. The evidence obtained from the search of his car is admissible.

### 2. *Miranda Exclusionary Rule*

Application of the *Miranda* exclusionary rule is broader than the Fifth Amendment itself. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). The rule may be triggered where there has not been a Fifth Amendment violation. *Id.* The Fifth Amendment prohibits a prosecutor from using compelled testimony. *Id.* at 305–06. The failure to advise a defendant of his *Miranda* warnings "creates a presumption of

compulsion." *Id.* at 306. Statements that are voluntarily given within the meaning of the Fifth Amendment may still be excluded by a court if there has been a failure to advise the defendant of his *Miranda* warnings. *Miranda* provides a "remedy even to the defendant who has suffered no identifiable constitutional harm." *Id.*

"When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the . . . case in chief." *Id.* at 317. There is "a narrow exception only where pressing public safety concerns deman[d]." *Id.*

The statements Abdi made to officers after Sergeant Gardzella detained Abdi are suppressed because Abdi was subjected to custodial interrogation and the officers failed to advise him of his *Miranda* rights.

The statements Abdi made during the interview with Sergeant Brueckman and Detective Dlugokenski are admissible.

The statements Abdi made during the interview with the FBI agents are admissible.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Court **GRANTS IN PART AND DENIES IN PART** Mohamed Abdi's Motion to Suppress (Doc # 35).

**IT IS FURTHER ORDERED** that the statements Mohamed Abdi made to Sergeant Gardzella on October 18, 2017, during and immediately following his arrest, are suppressed.

**IT IS FURTHER ORDERED** that all other statements Mohamed Abdi made to law enforcement officers on October 18, 2017 are admissible.

**IT IS FURTHER ORDERED** that the physical evidence obtained from Mohamed Abdi's car is admissible.

                                                 s/ Denise Page Hood
                                                 DENISE PAGE HOOD

DATED:  October 22, 2018          Chief Judge